UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-CIV-21836-WILLIAMS

FRANK JAMES,

    Plaintiff,

v.

SHEVAUN HARRIS,[1] *et al.*,

    Respondents.

_____/

### ORDER

**THIS MATTER** is before the Court on Magistrate Judge Lisette M. Reid's Report and Recommendation ("Report") (DE 18) on the Petition filed by Plaintiff Frank James[2] (DE 1). Mr. James filed Objections (DE 19) and Supplemental Objections (DE 27) to the Report. Following Mr. James' Supplemental Objections, the Court ordered Respondents to respond to Mr. James' initial Petition (DE 1) and required additional briefing on the Petition and the Report. Respondents filed their Response (DE 29), to which Mr. James filed a Reply (DE 35). Mr. James also filed a Supplemental Brief (DE 59), to which Respondents filed a Response (DE 61).

Although the Court **AFFIRMS AND ADOPTS** Judge Reid's Report and **DISMISSES WITHOUT PREJUDICE** Mr. James' Petition, given the duration and posture

---

[1] The Court directs the Clerk to restyle this matter pursuant to Federal Rule Civil Procedure 25(d), because Shevaun Harris is the current Secretary of the Department of Children and Families. (*See* DE 61 at 1 n.1.)

[2] Mr. James at times uses the alias of Mr. Frank Nunez. (DE 59 at 1.) Because the Petition was filed by Petitioner using the name Mr. Frank James, the Court refers at times to Petitioner as Mr. James.

of this case, the Court writes separately to address the line of cases following *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013), which find that civil commitment proceedings as of the type at issue here, fall within the *Younger v. Harris*, 401 U.S. 37 (1971), abstention doctrine. The Court also writes separately to highlight the extended delay Mr. James has confronted while awaiting trial pursuant to the underlying state civil commitment proceeding.[3]

## I. BACKGROUND

Mr. James has been detained since 1989,[4] even though he completed the prison sentence related to his 1989 convictions on January 1, 2015. (DE 29 at 2.) For the last seven (7) years, Mr. James has been detained in the Florida Civil Commitment Center ("FCCC") awaiting a civil commitment trial, often without a trial date. On May 1, 2019, more than four (4) years into his pre-trial detention, Mr. James filed the instant *habeas corpus* Petition (the "Petition") *pro se*. (DE 1.) Mr. James seeks relief in this matter pursuant to 28 U.S.C. § 2241 on the basis that "[t]he State is barred from prosecuting the Petition for Involuntary Civil Commitment" based on Florida statutory and constitutional law, and the U.S. Constitution. (*Id.* at 7.) ("The State is barred from prosecuting the Petition for Involuntary Civil Commitment by Florida Statutes 95.11(1), (6) & (9); Florida

---

[3] The underlying state proceeding is styled as *In re the Civil Commitment of Frank James a/k/a Frank Nunez*, No. 14-18880 CA 05 (Fla. 11th Cir. Ct. July 18, 2014) (the "State Proceeding").

[4] Mr. James was arrested on September 15, 1988, and ultimately pled guilty to one count of armed kidnapping and four (4) counts of armed sexual battery in Miami-Dade County Criminal Case No. F88-29515, and two (2) counts of armed sexual battery and one (1) count of aggravated battery in Miami-Dade County Criminal Case No. F88-229514B. *In re James*, No. 14-18880 CA 05, Pet. to Declare Resp. Sexually Violent Predator at 2–3 (July 18, 2014) (the "Commitment Petition").

Constitution Article 1 §§ 2, 9, & 10, as well as the Federal Constitution."). Mr. James identifies the statute of limitations on civil actions as the basis for his requested relief and argues that the civil commitment petition against him was filed outside the twenty (20)-year limitations period.[5] (*Id.*); *see* Fla. Stat. § 95.11(1).

This matter began formally with the underlying State Proceeding. On July 18, 2014, the Miami-Dade County State Attorney filed a petition (the "State Petition") in Miami-Dade Circuit Court to have Mr. James declared a sexually violent predator, and to commit him involuntarily pursuant to the Involuntary Civil Commitment of Sexually Violent Predators Act[6] ("Jimmy Ryce Act"). *See* Fla. Stat. §§ 394.910–394.932; (DE 59 at 4.) On that same date, the circuit court found probable cause, without a hearing, and signed a warrant for Mr. James' mandatory detention. (DE 59 at 4–5.) Once a finding of probable cause is made, as was done here, a trial must be conducted to determine if the person is a sexually violent predator under the Jimmy Ryce Act. *In re Fla. R. Civ. P. For Involuntary Commitment of Sexually Violent Predators*, 13 So. 3d 1025, 1031 (Fla. 2009); *see also Tedesco v. State*, 62 So. 3d 1252, 1255 (Fla. 4th Dist. Ct. App. 2011). Continuances of civil commitment trials pursuant to the Jimmy Ryce Act are "allowed only on good cause

---

[5] A state court has already rejected Mr. James' statute of limitations argument. *See James v. Carroll*, No. 2017-CA-597 (Fla. 12th Cir. Ct. Jan. 25, 2018) (holding "Petitioner's statute of limitations argument is … meritless") (also filed at DE 1-2).

[6] The Jimmy Ryce Act authorizes the involuntary civil commitment of persons who meet the definition of a "sexually violent predator," i.e., "any person who "(a) Has been convicted of a sexually violent offense; and (b) Suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." Fla. Stat. § 394.912.

shown. A future trial date shall be set if a further continuation is allowed."[7] *In re Fla. R. Civ. P.*, 13 So. 3d at 1031. Over the next several years, as the State Proceeding progressed, Mr. James alternatively represented himself *pro se* or was represented by counsel. (DE 59 at 7–10.) But, at no time over the three-year period following the July 2014 probable cause determination was a civil commitment trial held. Finally, the circuit court set a trial date in the State Proceeding for October 16, 2017. (*Id.* at 14.)

However, on August 4, 2017, Mr. James filed a *pro se* motion to halt the trial and appoint conflict-free counsel. (*Id.*) Mr. James asserted that the Public Defender's Office—which was representing him at the time—had a conflict of interest because it had previously represented his co-defendants in the underlying criminal case. (*Id.* at 14–15.) The circuit court granted in part and denied in part Mr. James' motion, discharging the Public Defender's Office but denying the request to halt the trial. (*Id.* at 15.) On September 1, 2017, Ms. Debra Cohen, Mr. James' current counsel in the State Proceeding, was appointed. (*Id.*) Although Respondents asserted that they were ready for trial, they agreed to allow time for Ms. Cohen to become familiar with the case. (*See id.* at 15–16.) Ten (10) months later, at a hearing on June 15, 2018, Respondents "expressed concern that the case was supposed to go to trial in 2017, when the state had been ready for trial." (*Id.* at 19.) Nevertheless, the parties agreed to continuances throughout 2018, 2019, and 2020.

---

[7] "The trial may be continued once upon the request of either party for **not more than 120 days** upon a **showing of good cause**, or by the court on its own motion in the interests of justice, when the person will not be substantially prejudiced. **No additional continuances may be granted** unless the court finds that a manifest injustice would otherwise occur." Fla. Stat. § 394.916(2) (emphasis added). Despite the mandated timeframe, Mr. James is still waiting for a trial after seven (7) years of detention following the completion of his prison sentence and no such findings have been made. However, the Court acknowledges that a significant part of the delay in the State Proceeding is attributable to Mr. James.

On November 1, 2021, Mr. James filed a motion in the State Proceeding to continue the trial. *In re James*, No. 14-18880 CA 05, Mot. Cont., DE 29 (Nov. 2, 2021) (the "Motion to Continue"). In the motion, Mr. James states he "is not ready for trial. His proposed expert has not been appointed." *Id*. Respondents filed additional state court transcripts on April 15, 2022, which reveal that trial was recently scheduled to begin on February 24, 2022.[8] (DE 67 at 21.)

---

[8] The transcripts, which relate to hearings in the State Proceeding held on November 3, 2021, December 16, 2021, and February 2, 2022, (DE 67 at 5, 12, 17), indicate that both the State and Mr. James' counsel requested continuances of the trial:

> Ms. Cohen: But I also filed a motion to continue, Judge . . .
>
> The Court: Okay. Ms. Aponte—Frank Aponte, excuse me—on the motion to continue, any objection there?
>
> Ms. Frank Aponte: No, Judge. At this point I don't think I have a basis to object since I, in good faith, need to take the father's depo. . . .
>
> . . .
>
> Ms. Frank Aponte: I know it's unrealistic right now to set it for trial. I could do a trial. I'm ready . . . . But I've gotta do due diligence pending discovery from the defense anyway.
>
> . . .
>
> Ms. Frank Aponte: Judge, is there any way we could do 2/24 instead of the 23rd?

(*See id.* at 7–8, 15, 21.) The Court notes that the transcripts do not evidence a finding of "good cause" or that the continuances were necessary to avoid "manifest injustice" as required by state statute. Fla. Stat. § 394.916(2). To illustrate, there is no explanation as to why the deposition of Mr. James' father had not been taken in the preceding seven years.

## II. LEGAL STANDARD

A party may serve written objections to a report and recommendation. The objections must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made, the specific basis for such objections, and supporting legal authority." S.D. Fla. L. Mag. R. 4(b). "A District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." *Id*.; *see also* 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

The Report recommends dismissal of this matter based on the *Younger* abstention doctrine because of Mr. James' pending civil commitment trial. (DE 18) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). The Court affirms the Report, but writes separately to address the line of cases following *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013). The Court also analyzes this matter under the *Barker v. Wingo*, 407 U.S. 514 (1972), speedy trial factors, which, although inapplicable to civil matters such as the instant proceeding, are nevertheless analogous.

### A. *Younger* Abstention Doctrine

In *Younger v. Harris*, the Supreme Court "recognized a limited exception to a federal court's 'virtually unflagging obligation' to exercise its jurisdiction when 'extraordinary circumstances' counsel abstention in favor of pending state proceedings." *Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324, 1344 n.15 (11th Cir. 2015) (citing *Younger*, 401 U.S. at 41); *For Your Eyes Alone, Inc. v. City of Columbus, Ga.*, 281 F.3d

1209, 1216 (11th Cir. 2002). From that "limited exception" flows the *Younger* abstention doctrine, which directs federal courts to abstain from enjoining ongoing state court criminal proceedings. *Younger*, 401 U.S. at 41 (emphasizing "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances"). Although the abstention doctrine has been expanded to encompasses state civil enforcement proceedings, "abstention remains the exception, not the rule." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (internal quotations omitted). The Court finds that the underlying State Proceeding represents exceptional circumstance warranting the exercise of abstention.

The Report reached its recommendation that the Court should abstain under *Younger* based on an analysis of the *Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423 (1982), factors. (DE 18 at 2.) The *Middlesex* factors provide for abstention under *Younger* in civil cases where: (1) there is a pending state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the parties have an adequate opportunity to raise any constitutional claims in the state proceeding. *Middlesex*, 457 U.S. at 432. Mr. James argued in his Supplemental Objections that the Report did not address *Sprint Communications*, which clarified that the *Middlesex* criteria are additional factors to be considered only once a court determines that the ongoing state proceeding is quasi-criminal in nature. (DE 27 at 5.) Mr. James' argument is incorrect, although the Court writes separately to address the line of cases following *Younger* and *Sprint Communications*.

In *Sprint Communications*, the Supreme Court noted that, "[d]ivorced from their quasi-criminal ***context***, the three *Middlesex* conditions would extend *Younger* to virtually

all parallel state and federal proceedings." *Sprint Communications*, 571 U.S. at 81 (emphasis added). Thus, *Sprint Communications* does not require a finding that a civil proceeding is "quasi-criminal" in nature, only that it is quasi-criminal in context, and clarifies what would constitute qualifying civil proceedings: (1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders which are uniquely in furtherance of a state court's ability to perform its judicial function. *Id.* at 78 (stating that these three categories "define *Younger*'s scope"). The pending State Proceeding at the heart of this matter is neither a state criminal prosecution nor a civil proceeding involving "certain orders" uniquely in furtherance of a Florida court's ability to perform a state judicial function, the first and third factors defining *Younger*'s civil scope. For the reasons discussed below, *Younger* abstention applies here under the second circumstance, a "civil enforcement proceeding." *See id.* In *Sprint Communications*, the Supreme Court explained that the abstention doctrine can be extended to civil enforcement proceedings which are "akin to a criminal prosecution" in "important respects." *Id.* at 79. The Supreme Court also provided factors for a court to weigh when determining whether the *Younger* abstention doctrine should apply in such proceedings. *Id.* at 79–80.

Pursuant to *Sprint Communications*, civil proceedings are "akin" to criminal prosecutions when such proceedings are initiated to sanction; involve a state actor as a party; or commonly involve investigations, "often culminating in the filing of a formal complaint or charges." *Id.* (noting *Younger* abstention is appropriate where "noncriminal proceedings bear a close relationship to proceedings criminal in nature") (citing *Middlesex*, 457 U.S. at 432). Under these factors, the Court finds that the State

Proceeding is one "akin" to a criminal prosecution. On balance, the State Proceeding is intended to result in the involuntary commitment of Petitioner; involves a state actor as a party; and requires evaluation of the Petitioner prior to commitment, an "investigation" into Petitioner's mental state. *See id*.; *see* Commitment Petition, *supra* at 2 n.4 (describing the psychological evaluation, or investigation, required to commit Petitioner). Further, the statutory scheme describes a civil commitment trial as an "adversarial proceeding" and states that persons subject to the Jimmy Ryce Act are "entitled to the assistance of counsel" and appointment of counsel by the court in cases of indigency. Fla. Stat. § 394.916(3).

Because the Court finds that the State Proceeding qualifies for *Younger* abstention under *Sprint Communications*, the *Middlesex* factors apply. *Middlesex* requires abstention when there is a pending state judicial proceeding, the proceeding implicates important state interests, and the parties have an adequate opportunity to raise constitutional claims in the state proceeding. *Middlesex*, 457 U.S. at 432. As noted in the Report, the first two *Middlesex* factors apply. (DE 18 at 3–4.) Moreover, Petitioner has raised his constitutional objections and will have the opportunity to again raise his constitutional claims in state court following a civil commitment trial. (*Id*.; DE 1-2.)

But even if the three *Middlesex* factors are satisfied, abstention is still not warranted if one of the following exceptions applies: "(1) there is evidence of state proceedings motivated by bad faith, (2) the state law being challenged is patently unconstitutional, or (3) there is no adequate alternative state forum where the constitutional issues can be raised." *For Your Eyes Alone,* 281 F.3d at 1214 n.11. Additionally, "a judicial exception . . . has been made where a person about to be

prosecuted in a state court can show that he will, if the proceeding in the state court is not enjoined, suffer irreparable damages." *Younger*, 401 U.S. at 43. None of the three exceptions articulated in *For Your Eyes Alone* exist here. There is no evidence the proceedings are motivated by bad faith; the Supreme Court has held that similar civil commitment proceedings are constitutional under *Kansas v. Hendricks*, 521 U.S. 346, 369 (1997);[9] the Florida Supreme Court has held the Jimmy Ryce Act is constitutional in *Westerheide v. State*, 831 So. 2d 93 (Fla. 2002); and Petitioner has already raised constitutional claims in state court, and will have an opportunity to raise constitutional objections again after the conclusion of the civil commitment trial, if necessary. (*See* DE 1-2.)

Following *Sprint Communications*, other federal courts have applied *Younger* abstention in similar cases involving habeas petitions in civil commitment proceedings under state legislation regarding sexually violent predators. *See Sykes v. Brown*, 2016 WL 8731354, at *2 (E.D. Cal. Jan. 22, 2016) (noting a case involving a sexually violent civil-commitment proceeding "is a state civil proceeding akin to a criminal prosecution" to

---

[9] The Supreme Court determined that similar civil commitment proceedings are not unconstitutional for the purposes of the Sixth Amendment double jeopardy and Article I, Section 10, Clause 1 *ex post facto* clauses because they are "civil in nature." *Kansas*, 521 U.S. at 369. That distinction does not serve to bar abstention under *Younger*. Rather, the Supreme Court's holding in *Kansas* is consistent with the *Younger* progeny under *Sprint Communications* which apply the abstention doctrine to civil commitment proceedings.

Importantly, *Middlesex* and *Sprint Communications* apply the *Younger* abstention doctrine in civil proceedings which are akin to a criminal proceeding in certain regards but are not criminal in nature. That rationale is consistent with the holding in *Kansas v. Hendricks* that a civil commitment proceeding pursuant to Kansas' Sexually Violent Predator Act was civil in nature and did not violate the Sixth Amendment. *Kansas*, 521 U.S. at 361–362.

which *Younger* abstention applies); *Hunter v. King*, 2016 WL 3019119, at *4 (E.D. Cal. May 26, 2016) (holding that it is appropriate to abstain "from considering Petitioner's challenges to the pending [civil commitment Sexually Violent Predator Act] proceedings and to dismiss the habeas petition … without prejudice); *Babinski v. Voss*, 323 F. App'x 617, 619 (9th Cir. Apr. 24, 2009) (affirming the dismissal of a habeas petition under the *Younger* abstention doctrine where the petitioner was facing a civil commitment trial pursuant to California's Sexually Violent Predator Act); *Jones v. Cuomo*, 2017 WL 4639714, at *2 (W.D.N.Y. Oct. 17, 2017) (holding a state civil-commitment proceeding "likely fall[s] within one or both of [the *Sprint Communications*] categories"); *see also Justice v. Woodlock*, 2015 WL 145643, at *2 (N.D.N.Y. Jan. 12, 2015) (holding civil recommitment proceedings "are more akin to a criminal prosecution than are most civil cases"); *see also Kane v. Bailey*, 2017 WL 7037684, at *2 (D. Vt. Oct. 10, 2017) (holding *Younger* applies to an involuntary hospitalization and medication order on appeal to a state supreme court).

Based on the foregoing, the *Younger* abstention doctrine compels the Court to abstain from interfering in this matter. There is an ongoing state civil commitment proceeding which is "akin to a criminal prosecution" under *Sprint Communications*, and therefore it is appropriate for the Court to abstain from enjoining the underlying State Proceeding. *See Sprint Communications*, 571 U.S. at 79–80. Accordingly, the Report (DE 18) is affirmed and adopted, and Mr. James' Petition (DE 1) is dismissed without prejudice.

### B. *Barker* Speedy Trial Factors

Consistent with the Supreme Court's holding in *Kansas v. Hendricks*, 521 U.S. 346 (1997), that civil commitment proceedings do not violate the Sixth Amendment double jeopardy clause, the Supreme Court has not extended the Sixth Amendment due process right to a speedy trial to civil commitment proceedings. *See Hunter*, 2016 WL 3019119 at *6. Nevertheless, the Court briefly considers Mr. James' civil commitment proceeding under the *Barker v. Wingo*, 407 U.S. 514, 530 (1972), speedy trial factors with regard to whether Mr. James has been afforded constitutional due process. The delay of seven (7) years in holding Mr. James' civil commitment trial is troubling, especially because the state record is devoid of the required statutory findings of "good cause" for delay to avoid "manifest injustice." Fla. Stat. § 394.916(2). On this record, the Court ultimately concludes that Mr. James contributed to the delay in trial and no due process concern is implicated. But a different record or a record demonstrating a pattern of state delay might warrant a different outcome. *See Barker*, 407 U.S. at 530.

In *Barker*, the Supreme Court established a four-factor test to determine whether a criminal defendant has been deprived of his or her right to a speedy trial under the Sixth Amendment. *Id*. The four factors are: (1) length of the delay, (2) reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id*. Here, the length of the delay, although significant, is in large part due to Mr. James' own actions, including moving to discharge counsel, moving for extensions of time, and moving to continue trial. (DE 59 at 15, 19); Motion to Continue, *supra* at 5. As recently as November 1, 2021, Mr. James moved to continue the State Proceeding. Motion to Continue, *supra* at 5. Earlier delay in the State Proceeding is also attributable to Mr. James: a trial was

initially set in the State Proceeding for October 16, 2017, but on August 4, 2017, Mr. James filed a *pro se* motion to halt the trial and appoint conflict-free counsel. (DE 59 at 14.) The Court does not fault Mr. James for seeking additional time to file responses or to find counsel he is satisfied with. However, such actions contribute to the delay in bringing the State Proceeding to a close and any prejudice suffered by Mr. James is in some part attributable to Mr. James himself. The Court also notes that the delay experienced by Mr. James is some months longer than the five (5)-plus-year delay in trial experienced by the plaintiff in *Barker*. *Barker*, 407 U.S. at 533. Nonetheless, although the *Barker* factors have not been extended to apply to civil commitment proceedings, even if they were, it is unlikely that Mr. James has been deprived of a right to a speedy trial in the State Proceeding. However, the Court is concerned that Respondents appear to sanction continuances of Mr. James' civil commitment trial in the absence of a clear finding of good cause for the delay, as required by Florida Statutes Section 394.916(2). Fla. Stat. § 394.916(2).

## IV. CONCLUSION

Today, Mr. James remains in pre-trial limbo.[10] Although the Court affirms the result of Judge Reid's Report and dismisses Mr. James' Petition, the Court is concerned about the ongoing delay in holding Mr. James' civil commitment trial pursuant to Florida law. *See* Fla. Stat. § 394.916(1)–(2). The Court acknowledges that the record indicates

---

[10] On April 14, 2022, Mr. James filed a Letter to the Court. (DE 65.) In the Letter, Mr. James threatened to hunger strike, commencing on May 1, 2022, because he was housed with adjudicated detainees and not "pre-trial detainees only, or in a one-man cell . . . ." (*Id.* at 5.) Mr. James has filed a petition for writ of mandamus in the DeSoto County Circuit Court on this issue. (*Id.* at 2); *James v. Harris*, No. 22-CA-91 (Fla. 12th Cir. Ct. Feb. 25, 2022); (DE 65, Ex. A).

Respondents have at some points asked for trial to proceed while Mr. James has also moved for continuances. (DE 59 at 15); Motion to Continue, *supra* at 5. But it cannot become the norm that detainees pursuant to the Jimmy Ryce Act are held for the better part of a decade without a determination by "[t]he court or jury … by clear and convincing evidence whether [a] person is a sexually violent predator." Fla. Stat. § 394.917(1). The Court abstains from determining the merits of Mr. James' Petition pursuant to *Younger v. Harris*, but cautions that future evidence of a pattern of such delay in setting civil commitment trial dates, let alone holding such trials, may indicate that abstention is no longer appropriate. *See Younger*, 401 U.S. at 41.

Nevertheless, upon a careful review of the Report, the Petition, and the record, it is **ORDERED AND ADJUDGED** that:

1. Judge Reid's Report (DE 18) is **AFFIRMED AND ADOPTED**.

2. Mr. James' Petition (DE 1) is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk is directed to restyle this case as *Frank James v. Shevaun Harris*, No. 19-cv-21836-KMW (S.D. Fla. 2022).

4. The Clerk is ordered to **CLOSE** the case.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 26th day of May, 2022.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE